Carmen Ana Martínez, representada por su padre con patria potestad, Rafael Martínez, demandante y apelada, *v.* Andréu, Aguilar y Compañía, Inc., y Elías González, demandados y apelantes.

Núm. 8038.—*Sometido:* Junio 20, 1940. *Resuelto:* Julio 5, 1940.

*Géigel & Silva* (*C. Andréu Ribas,* en el alegato), abogados de los apelantes; *Edelmiro Martínez Rivera,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Esta apelación ha sido ·interpuesta por la corporación codemandada, Andréu, Aguilar y Cía., Inc., contra una sentencia que le condena a pagar solidaria y mancomunadamente con el otro codemandado, Elías González Amador, la suma de $1,500 a la demandante Carmen Ana Martínez, más las costas, incluyendo éstas la cantidad de $200 para honorarios de abogado.

De acuerdo con los hechos alegados en la demanda, entre 8.30 y 9.00 a. m. del día 14 de octubre de 1937, Elías González Amador, a la sazón empleado de la casa Andréu, Aguilar y Cía., Inc., debido a su impericia y negligencia lanzó el automóvil que conducía, propiedad de Andréu, Aguilar y Cía., Inc., contra la casa núm. 5 de la calle "Nueva," del barrio "Marina," de esta ciudad de San Juan, internándose hasta la sala de la casa donde arrolló a la niña demandante causándole ". . . además de heridas en la cabeza y fuertes golpes y contusiones en distintas partes de su cuerpo, la fractura de ambos huesos de su pierna izquierda."

Como acto específico de negligencia contra Andréu, Aguilar y Cía., Inc., que es la única apelante en este recurso, se alega que ". . . no ejerció la diligencia y el cuidado de un buen padre de familia para mantener el vehículo en cuestión bajo adecuado y razonable control para evitar que con el mismo se causaran daños a las personas y propiedad ajenas, habiendo permitido y dejado por el contrario, que dicho automóvil fuera como fué manipulado por el codemandado Elías González, persona ésta no autorizada a guiar vehículos de motor en los caminos públicos de la Isla."

La contestación de la demandada admite la ocurrencia del accidente; la impericia y negligencia del codemandado Elías González Amador; su responsabilidad civil hacia la demandante; la propiedad del vehículo con que se ocasionó el daño y por último, ". . . que como consecuencia de los golpes y lesiones recibidos por la demandante en virtud del referido accidente, ésta ha sufrido y sufre intensos dolores físicos" de los que antes no padecía. Limitados así los *issues* fué el caso a juicio con el resultado que conocemos.

Se señalan por la apelante en su alegato nueve errores que no vamos a discutir separadamente, primero, porque se ha incurrido en innecesaria repetición, y segundo, porque la apelante somete la mayoría de ellos sin darles tratamiento independiente. Los dividiremos, por tanto, en tres grupos para tratar en el primero de la responsabilidad de la apelante por la culpa o la negligencia del codemandado; en el segundo, de todo lo referente a la apreciación de la prueba, y en el tercero, de la cuantía de la indemnización concedida.

Como se dijo en *Burgos* v. *Sobrinos de Villamil,* 41 D.P.R. 84, caso que cita la apelante en apoyo de los errores que comprenden el primer grupo, lo fundamental para los términos en que fué dictada la sentencia apelada es si se probó o no que entre las funciones del empleo de Elías González Amador no estaba la de manejar el automóvil, y que la demandada había prohibido terminantemente que sus automóviles fueran manejados por los aprendices de mecánica. Don Teodoro Aguilar Mora, tesorero de la corporación demandada, declaró que Elías González Amador trabajaba en su empresa de aprendiz de mecánica. Sobre si terminantemente se le había prohibido o no a González, por don Teodoro Aguilar Mora o por cualquier otro jefe de la empresa con autoridad para ello, que guiara los automóviles de la demandada, guarda completo silencio el récord. En ese particular es este caso distinto al de Villamil, supra, donde ". . . la parte demandada demostró fuera de duda razonable que Pablo Martínez no estaba autorizado para guiar el *truck* de la

demandada y que ésta tenía expresamente para ese servicio al *chauffeur* Manuel Villar Alonso, sin que se hubiera probado que en otras ocasiones el peón hubiera guiado el *truck* y, por el contrario, según declaró el *chauffeur* él no permitía que el peón manejara el vehículo porque no estaba autorizado y porque el jefe de la casa demandada había prohibido expresamente que fuera manejado por persona distinta del *chauffeur*." Y si en aquel caso Sobrinos de Villamil tomó la precaución de dar a su peón Pablo Martínez tales órdenes, a pesar de lo ajeno que al oficio de chófer es el de peón, más obligado a tomarla estaba la aquí demandada, por la naturaleza del oficio que en su empresa desempeñaba González, en el que, no obstante lo que dice la demandada, está implícito el guiar, en ausencia de órdenes en contrario. Al no hacerlo así, la apelante fué negligente, y por tanto, responsable de un accidente que no es otra cosa que la natural y probable consecuencia de su omisión.

█ ¿Hubo error en la apreciación de la prueba o actuó la corte inferior con pasión, prejuicio y parcialidad? Es cierto que el juez interrogó a los testigos de la demandada algo más de lo que hubiera sido necesario en casos como el de autos, pero su actuación está lejos de haber sido apasionada, prejuiciada o parcial. Por el contrario, puede afirmarse que está inspirada en un deseo de mayor comprensión de los hechos, que le permitiera llegar a conclusiones justas. Por ejemplo, el codemandado Elías González Amador puso tanto empeño en demostrar su ignorancia de todo lo relacionado con un automóvil, que su declaración resulta chocante. Su pretendida ignorancia llegó al extremo de negar su conocimiento de aquellas partes de un automóvil que aun el campesino que ha vivido toda su vida en las regiones más internas de nuestra isla, conoce. En esas circunstancias, no es de extrañar que un juez se esfuerce en averiguar por medio de preguntas si un testigo miente o dice la verdad al contestar que no sabe lo que es el bonete de un carro y sin embargo

explicó detalladamente el procedimiento mediante el cual se pone en marcha un automóvil.

Se cita también como hecho demostrativo de que hubo pasión, prejuicio y parcialidad, el siguiente diálogo entre la corte y don Teodoro Aguilar Mora:

"R. Yo no lo he mandado absolutamente nada y yo soy el vigilante allí, porque el otro siempre está en la calle; soy el hombre guardián.

"P. ¿Usted es el que más está allí?

"R. Sí, el que me ocupo de todo, porque Pepe Andréu esta vendiendo en la parte alta.

"P. ¿Qué sitio ocupa Pepe Andréu?

"R. La oficina principal en los automóviles, el jefe de ventas, el nervio de la casa. Yo me ocupo de los particulares, de estas cosas pequeñas.

"La Corte: ¿Qué cosas pequeñas?

"R. Del manejo.

"La Corte: ¿Pero usted llama este asunto pequeño?

"R. No, este asunto no. Yo no tengo nada que ver con este asunto. Si este muchacho, al coger el automóvil, mata al Gobernador de Puerto Rico, ¿qué tengo yo que ver?

"Sr. Martínez Rivera: Que se elimine eso.

"La Corte: ¿Usted no quiere que maten al Gobernador?

En el incidente no hubo más que un mal entendido entre el juez y el testigo.

■ Con respecto a la cuantía de la indemnización y la condena en costas que incluyen $200 para honorarios, debe resolverse que no es excesiva, considerando los agravantes que concurren en este caso. La demandante es una niña de seis años que el día del accidente se encontraba, según la evidencia, desayunando en la sala de su casa. Estaba no sólo donde tenía derecho ella a estar y a González le estaba vedado penetrar, sino en un lugar donde le era lícito esperar la mayor seguridad: en su hogar. El médico que la atendió declaró que tenía fracturados los huesos fíbula, y tibia de la pierna izquierda; que se trataba de fracturas completas; que en el Hospital Presbiteriano estuvo bajo tratamiento desde el 14 de octubre de 1937 al 4 de noviembre del mismo

año; que de un examen que le hiciera poco antes de la vista del caso ante la corte inferior encontró una pequeña deformidad en la pierna que tardaría de cuatro a cinco años en desaparecer; que la niña estaba inconsciente cuando se le recluyó en el hospital debido a los golpes que había recibido en la cabeza; que le enyesó la pierna y que ese tratamiento produce molestias; que las fracturas y golpes que recibiera la niña causan intensos dolores, molestias físicas, y requieren cuidado especial.

Rafael Martínez Serrano, padre de la niña, declaró que su hija rebajó de peso después del accidente y quedó inapetente; que los días de "barrunto," o sea los lluviosos, tiene que friccionarla con medicinas que los médicos le han mandado; que el doctor Abel de Juan seguía tratando a su hija; que cuando no siente dolor, ella duerme bien, pero que en los días lluviosos no duermen ni ella ni él.

Bajo tales circunstancias debemos resolver que la indemnización concedida es justa y razonable.

*La sentencia recurrida debe confirmarse en todas sus partes.*